**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEVEN UMBRIA, | : CIVIL ACTION |
| | : |
| | : Case No. 2:21-cv-01718-ER |
| Plaintiff, | : |
| v. | : |
| | : |
| VALLEY FORGE CASINO RESORT | : |
| | : |
| and | : |
| | : |
| BOYD GAMING CORPORATION, | : |
| | : |
| Defendants. | : |
| | : |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR SUMMARY JUDGMENT</u>**

# **Table of Contents**

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ............................................................................... 2

III. STATEMENT OF UNDISPUTED  MATERIAL FACTS ................................ 3

    A.   VALLEY FORGE HIRES PLAINTIFF AS DIRECTOR OF IT ............................. 3

    B.   THE COVID-19 PANDEMIC SHUTS DOWN VALLEY FORGE AND
        PLAINTIFF REQUESTS TO WORK FROM HOME ............................................ 3

    C.   DEFENDANTS FURLOUGH EMPLOYEES AS A COST-SAVING MEASURE,
        INCLUDING PLAINTIFF .................................................................................. 4

    D.   DEFENDANTS ELIMINATE PLAINTIFF'S POSITION AND ASSIGN
        RESPONSIBILITIES TO REGIONAL DIRECTOR ........................................... 5

    E.   PLAINTIFF APPLIES FOR KANSAS STAR DIRECTOR OF IT POSITION ..... 5

IV. STANDARD OF REVIEW ................................................................................ 7

V.   ARGUMENT ...................................................................................................... 8

    A.   SUMMARY JUDGMENT IS REQUIRED ON PLAINTIFF'S AGE
        DISCRIMINATION CLAIM UNDER THE ADEA (COUNT I). .......................... 9

        1.   Plaintiff Cannot Establish the *Prima Facie* Case of Age Discrimination Because
            He Cannot Point to Any Facts Evidencing an Age-Based Animus. ................. 10

        2.   Defendants' Explanation for the Elimination of Plaintiff's Position is Credible,
            Coherent, and Well-Documented, and Therefore Satisfies the Second Step of
            the *McDonnell-Douglas* Framework. ................................................... 13

        3.   Plaintiff Cannot Demonstrate That Defendants' Legitimate, Non-
            Discriminatory Reason is False or That His Age was the But-For Cause of His
            Termination. ..................................................................................... 13

    B.   SUMMARY JUDGMENT IS REQUIRED ON PLAINTIFF'S  DISABILITY
        DISCRIMINATION CLAIM (COUNT II). ....................................................... 16

        1.   Plaintiff Cannot Establish the *Prima Facie* Case of Disability Discrimination 16

        2.  Plaintiff Cannot Demonstrate That Defendants' Legitimate, Non-
            Discriminatory Reasons for the Position  Elimination were False, or  that
            Plaintiff's Alleged Disabilities were the But-for Cause of Those  Decisions...... 17

    C.   SUMMARY JUDGMENT IS REQUIRED ON PLAINTIFF'S  RETALIATION ...
        CLAIMS UNDER THE ADEA AND THE ADA  (COUNTS III AND IV)............ 18

IV.  CONCLUSION .................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acumed LLC v. Advanced Surgical Servs., Inc.*,
  561 F.3d 199 (3d Cir. 2009)...................................................................8

*Advanced Surgical Servs., Inc.*,
  561 F.3d 199, 228 (3d Cir. 2009)............................................................8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................7

*Andreoli v. Gates*,
  482 F.3d 641 (3d Cir. 2007)................................................................19

*Blakney v. City of Philadelphia*,
  559 F. App'x 183 (3d Cir. 2014) ..........................................................18

*Burton v. Teleflex Inc.*,
  707 F.3d 417 (3d Cir. 2013)................................................................10

*Carson v. Bethlehem Steel Corp.*,
  82 F.3d 157, 159 (7th Cir. 1996) .........................................................15

*Celotex Corp v. Catrett*,
  477 U.S. 317 (2008)...........................................................................8

*Daniels v. Sch. Dist. of Phila.*,
  776 F.3d 181 (3d Cir. 2015)................................................................19

*DeJoy v. Comcast Cable Communications, Inc.*,
  968 F. Supp. 963 (D.N.J. 1997) ............................................................9

*Dodson v. Coatesville Hosp. Corp.*,
  Civ. No. 18-3065, 773 F. App'x 78 (3d Cir. 2019) ...................................10

*Dungee v. Northeast Foods, Inc.*,
  940 F. Supp. 682 (D.N.J. 1996) ..........................................................11

*E.E.O.C. v. BE&K Eng'g Co.*,
  536 F. Supp. 2d 498 (D. Del. 2008).....................................................11

*Elwell v. PP & L Inc.*,
  47 F. App'x 183 (3d Cir. 2002) ......................................................11, 12

*Fireman's Ins. Co. of Newark, NJ v. DuFresne*,
    676 F.2d 965 (3d Cir. 1982)...................................................................................7

*Fuentes v. Perskie*,
    32 F.3d 759 (3d Cir. 1994)........................................................................8, 13, 14

*Gillyard v. Geithner*,
    81 F. Supp. 3d. 437 (E.D. Pa. 2015) ....................................................................19

*Grady v. Affiliated Cent., In.*,
    130 F.3d 553, 560 (2d Cir. 1997).........................................................................12

*Gross v. FBL Fin. Servs.*,
    557 U.S. 167 (2009)..........................................................................................9, 14

*Harrison-Harper v. Nike, Inc.*,
    788 F. App'x 846 (3d Cir. 2019) ..........................................................................19

*Hodczak v. Latrobe Specialty Steel Co.*,
    451 F. App'x 238 (3d Cir. 2011) ..........................................................................14

*Hutchins v. United Parcel Service, Inc.*,
    197 F. App'x 152 (3d Cir. 2006) ..........................................................................18

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
    480 F.3d 259 (3d Cir. 2007)..................................................................................18

*Keller v. Orix Credit All., Inc.*,
    130 F.3d 1101 (3d Cir. 1997)................................................................................15

*Kelly v. Moser*,
    348 F. App'x 746 (3d Cir. 2009) ......................................................................9, 11

*Klimek v. United Steelworkers Local 397*,
    618 F. App'x 77 (3d Cir. 2015) ............................................................................15

*Krouse v. American Sterilizer Co.*,
    126 F.3d 494 (3d Cir. 1997)....................................................................................8

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) .........................................................................................8, 13

*Orsatti v. N.J. State Police*,
    71 F.3d 480 (3d Cir. 1995).......................................................................................8

*Petrulio v. Teleflex*,
    Civ. No. 12-7187, 2014 WL 5697309 (E.D. Pa. Nov. 5, 2014) ...........................18

iii

*Reap v. Cont'l Cas. Co.*,
Civ. No. 99-1239, 2002 WL 1498679 (D.N.J. June 28, 2002) ....................................11, 12, 13

*Scott v. Genesis Healthcare, Inc.*,
Civ. No. 15-0916, 2016 WL 4430650 (E.D. Pa. Aug. 22, 2016) ............................................19

*Sgro v. Bloomberg L.P.*,
Civ. No. 05-731, 2008 WL 918491 (D.N.J. Mar. 31, 2008), *aff'd in part,
reversed in part on other grounds*, 331 F. App'x 932 (3d Cir. 2009) .....................................12

*Shaner v. Synthes*,
204 F.3d 494 (3d Cir. 2000)........................................................................................................16

*Simpson v. Kay Jewelers*,
142 F.3d 639 (3d Cir. 1998)........................................................................................................14

*Smith v. City of Allentown*,
589 F.3d 684 (3d Cir. 2009)....................................................................................................8, 11

*Taylor v. Phoenixville Sch. Dist.*,
184 F.3d 296 (3d Cir. 1999)........................................................................................................16

*Tomasso v. Boeing Co.*,
445 F.3d 702 (3d Cir. 2006)........................................................................................................14

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
570 U.S. 338, 362 (2013)............................................................................................................18

*Verma v. University of Pennsylvania*,
533 F. App'x 115 (3d Cir. 2013) ................................................................................................18

*Willis v. UPMC Children's Hosp. of Pittsburgh*,
808 F.3d 638 (3d Cir. 2015)..............................................................................2, 10, 13, 14

**Statutes**

29 U.S.C. Section 623(a)(1)..............................................................................................................9

42 U.S.C. § 12102(1)(A)..................................................................................................................16

Age Discrimination in Employment Act .........................................................................................2

Americans with Disabilities Act ......................................................................................................2

Pennsylvania Human Relations Act..................................................................................................2

Pennsylvania Human Relations Act, 43 P.S § 955(a)......................................................................2

PHRA..........................................................................................................................................2, 10

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................................7

## I.   <u>INTRODUCTION</u>

In March 2020, the worldwide COVID-19 pandemic brought the Valley Forge Casino Resort ("Valley Forge") to a standstill.  Literally, Valley Forge closed its doors overnight. During the closure, parent company Boyd Gaming Corporation ("Boyd") and its affiliated properties assessed cost-containing measures.  In May 2020, Defendants initiated two waves of furloughs.  Though Boyd did not select Plaintiff Steven Umbria ("Mr. Umbria" or "Plaintiff") for the first round of furloughs, Boyd identified his Director of IT position for the second round of furloughs in May 2020.  Shortly thereafter, Boyd decided to eliminate redundancy to save costs. In conjunction with this effort, Boyd eliminated Plaintiff's position as Valley Forge Director of Information Technology ("IT") on July 9, 2020.

Plaintiff, who had only worked at Valley Forge for roughly five (5) months prior to the pandemic, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") claiming age and disability discrimination.  Then, he filed a second Charge of Discrimination, alleging Boyd retaliated against him for filing his first Charge by not hiring him for subsequent employment.

Despite his claims, Plaintiff testified that his age had nothing to do with the decisions to furlough or eliminate his position and admitted that no evidence exists to link these adverse employment actions to his age.  Similarly, he denies being disabled and produces absolutely no evidence to suggest that disability motivated any adverse employment action.  Further, the record is completely devoid of any evidence to suggest that Defendants' legitimate business reason for Plaintiff's furlough and position elimination is pretext for discrimination.  Finally, Plaintiff's attempt to manufacture a retaliation claim is disingenuous at best as discovery revealed that another candidate was selected for the position to which he applied *before* the decision maker

1

had any knowledge that Plaintiff had filed an EEOC Charge.  Accordingly, he has failed to produce even a scintilla of evidence supporting his allegations, and thus cannot prove that his EEOC Charge was the cause of his rejection.  For these reasons, Plaintiff's claims fail as a matter of law and summary judgment should be granted.

## II.    PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 13, 2021.  ECF No. 1 (the "Complaint"), attached hereto as **Exhibit A**.  In his Complaint, Plaintiff alleges that Defendants violated the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act, as Amended ("ADA"), by discriminating against him because of his age and/or disability and retaliating against him for filing a charge with the EEOC.  Complaint at ¶¶ 15-71.[1]  The parties engaged in extensive fact discovery, including five depositions and exchanging nearly a thousand Bates numbered pages of documents, which ended on November 10, 2021.  *See* ECF No. 15.  Defendants now move for summary judgment, seeking dismissal of all claims in Plaintiff's Complaint.

---

[1] Plaintiff also alleged violations of the Pennsylvania Human Relations Act ("PHRA") but acknowledged that those claims were untimely as of the filing of the Complaint.  Complaint at ¶ 7 ("Upon receipt of applicable authority from the Pennsylvania Human Relations Commission, Plaintiff intends to amend this Complaint and assert causes of action for age and disability discrimination and retaliation under the Pennsylvania Human Relations Act, 43 P.S § 955(a).").  To date, Plaintiff has not amended his Complaint to add such claims.  If Plaintiff does amend his Complaint after the submission of this instant Motion, Defendants ask the Court to apply the arguments made herein equally to Plaintiff's PHRA claims as Courts in this circuit routinely do when faced with parallel federal and PHRA claims.  *See, e.g., Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (analyzing the plaintiff's federal and PHRA claims and noting that the "interpretation of the PHRA is identical to that of federal anti-discrimination laws.").

III.   **STATEMENT OF UNDISPUTED  MATERIAL FACTS**

   A.   **VALLEY FORGE HIRES PLAINTIFF AS DIRECTOR OF IT**

   In 2019, at the age of 63, Plaintiff applied for the open Director of IT position at Valley

Forge.   *See* Deposition Transcript of Steven Umbria ("Plaintiff Dep."), attached hereto as

**Exhibit B**, at 17:7-17:8; 29:4-29:10.   As part of the hiring process, Plaintiff interviewed with

members of the Valley Forge executive team and Boyd IT leadership, including David Zerfing

("Zerfing"), then General Manager of Valley Forge, and Gregg Lowe ("Lowe"), Vice President

of IT Operations, for Boyd.  *Id.* 35:15-36:6.   At the time of interview, Lowe was age 50 and

Zerfing was 58.   *See* Deposition Transcript of Gregg Lowe ("Lowe Dep."), attached hereto as

**Exhibit C**, at 17:7-17:8; Declaration of Gregg Lowe ("Lowe Declaration"), attached hereto as

**Exhibit D**, at ¶ 2.  On August 2, 2019, after Lowe approved Plaintiff's hiring, Zerfing extended

Plaintiff an offer to serve as the Director of IT for Valley Forge.   Plaintiff Dep. at 46:3-46:7;

Lowe Dep. at 19:19-19:24.   Plaintiff accepted and started his new position on September 4,

2019.  Plaintiff Dep. at 38:6-38:9.

   In his role as the Director of IT, Plaintiff was primarily responsible for converting and

integrating Valley Forge's IT systems with Boyd's systems, overseeing all Valley Forge IT

systems, overseeing customer-facing support services, and managing the local IT team.  Plaintiff

Dep. at 46:22-48:21.

   B.   **THE COVID-19 PANDEMIC SHUTS DOWN VALLEY FORGE AND
        PLAINTIFF REQUESTS TO WORK FROM HOME**

   A few months after Plaintiff's hire, in March 2020, the global COVID-19 pandemic

forced Valley Forge to close.  Deposition Transcript of David Zerfing ("Zerfing Dep."), attached

hereto as **Exhibit E**, at 27:17-27:22.  The closure provided an opportunity for the Valley Forge

IT team to focus more specifically on its conversion and integration with Boyd IT systems.

3

Plaintiff Dep. at 76:11-76:24.  Initially, the team worked onsite despite the closure.  *Id.* at 74:9-76:24.  However, on or about March 23, 2020, Plaintiff communicated to Zerfing and Lowe a request to work remotely.  *Id.* at 77:2-77:8; Complaint at ¶ 33.  In response, both Zerfing and Lowe approved Plaintiff's request, told Plaintiff that remote work would not be a problem, and told Plaintiff to "stay well."  Plaintiff Dep. at 77:2-77:8, 81:17-81:24.  Plaintiff began working remotely on or about March 26, 2021.  Complaint at ¶ 33.  Other Boyd and Valley Forge employees, including but not limited to IT technical staff, also worked remotely at the time.  Plaintiff Dep. 74:18-21; Deposition Transcript of Donna Hogan, attached hereto as **Exhibit F**, at 16:8-16:11.

### C. DEFENDANTS FURLOUGH EMPLOYEES AS A COST-SAVING MEASURE, INCLUDING PLAINTIFF

As the COVID-19 shutdown continued, in an attempt to save costs, Defendants implemented multiple rounds of furloughs.  Lowe Declaration at ¶ 3.  Notably, Plaintiff was not initially furloughed.  *Id.* at ¶ 4.  However, as time went on, Lowe realized that the conversion to Boyd systems could be mostly handled by existing Boyd employees who had previously converted and integrated the systems at other properties.  *Id.* at ¶ 5.  This realization led Lowe to select Plaintiff, as well as other members of the IT Department, for the second round of furloughs on May 7, 2020.  *Id.* at ¶ 6.  In all, three (3) out of a total of four (4) IT Department employees at the Valley Forge location were furloughed at that time.  *Id.* at ¶ 7; Plaintiff Dep. at 96:1-96:18.  The other two (2) individuals furloughed were under 40 and not disabled.  Lowe Declaration at ¶ 8.  Lowe made the decision to furlough Plaintiff.  *See* Defendants' Answers to Plaintiff's Interrogatories ("Defendants' ROG Answers"), attached hereto as **Exhibit G**, at Answer to ROG 6.  Zerfing agreed with Lowe's decision.  *See* Zerfing Dep. at 29:2-29:9.

### D.      DEFENDANTS ELIMINATE PLAINTIFF'S POSITION AND ASSIGN RESPONSIBILITIES TO REGIONAL DIRECTOR

As the shutdown continued, so did Boyd's cost containment measures.  Lowe Declaration at ¶ 9.  In furtherance of this effort, Lowe made the decision to eliminate the Valley Forge Director of IT position.  Defendants' ROG Answers at Answer to ROG 7.  In doing so, Lowe created a new Regional Director of IT role with the intention of the regional role subsuming the duties of Valley Forge's prior Director of IT responsibilities.  Lowe Declaration at ¶ 10.  Lowe selected Tom Schopf,[2] age 61, as Regional Director of IT.  Deposition Transcript of Tom Schopf ("Schopf Dep."), attached hereto as **Exhibit H**, at 6:21-6:22.  On or about July 9, 2020, Defendants informed Plaintiff his position was eliminated.  Complaint at ¶ 40; Plaintiff Dep. at 98:4-98:21.  As planned, Schopf assumed the on-site IT responsibilities for the Valley Forge property when Boyd promoted him to Regional Director of IT in October 2020.  Plaintiff Dep. at 98:4-98:21; Defendants' Answers to ROGs at Answer to ROG 3.

### E.      PLAINTIFF APPLIES FOR KANSAS STAR DIRECTOR OF IT POSITION

On October 2, 2020, Plaintiff submitted a Charge of Discrimination (the "First Charge") against Valley Forge.  Complaint at ¶ 5.  While the First Charge was pending, Plaintiff applied for an open Director of IT position at Boyd's Kansas Star Casino property in February 2020.  Plaintiff Dep. at 145:1-145:13.

Before Plaintiff applied for the Kansas Star role, however, Boyd had already identified and interviewed a lead candidate.  Crystal Ellis ("Ellis"), former Employment Center Manager for Boyd, was tasked with identifying qualified candidates for the Kansas Star position.  Statement of Crystal Ellis ("Ellis Statement"), attached hereto as **Exhibit I**, at ¶¶ 1-2.  On

---

[2] Schopf was an existing Boyd employee who worked remotely for at least two years prior to his promotion to Regional Director of IT.  Schopf Dep. at 17:1-17:6.

January 21, 2021, Ellis identified a lead candidate for the Kansas Star Director IT position after an initial telephone interview.  *Id.* at ¶ 3.  The following day, Ellis scheduled the lead candidate for a secondary interview with the hiring manager.  *Id.*  After Ellis interviewed the lead candidate, Ellis did not consider any other candidates for the role.  *Id.* at ¶ 4.

On January 26, 2021 at 10 A.M., the hiring manager interviewed the lead candidate and recommended that he move forward with the hiring process.  *Id.* at ¶ 5.  Subsequent to his interview, the lead candidate met with Boyd again on January 28, 2021.  *Id.* at ¶ 6.  On that date, Boyd decided to extend an offer of employment to the lead candidate for the Kansas Star Director IT position.  *Id.*

On January 26, 2021 at approximately 12:10 P.M., Plaintiff submitted his application for the Kansas Star Director IT position.  *Id.* at ¶ 7.

On February 10, 2021, the lead candidate for the Director of IT position accepted Boyd's employment offer.  *Id.* at ¶ 9.  Consequently, on February 10, 2021, Ellis accessed applications submitted by other candidates – including Plaintiff – with the intention of closing out their open applications and marking them as "rejected."  *Id.*  at ¶ 10.  On that date, Ellis opened Plaintiff's application for the **first time**, quickly scanned it to assess whether he would have been qualified for the position in the event that the position later reopened or another similar position may open.  *Id.*  at ¶ 11.  In doing so, Ellis saw that Plaintiff possessed prior Director IT experience based on the "work experience" he entered into the application fields.  *Id.*  Because of that experience entered by Plaintiff, Ellis coded Plaintiff's application as "Met requirements, but another individual was selected."  *Id.*  Ellis did <u>not</u> access the attachment to Plaintiff's application on February 10, 2021.  *Id.* at ¶ 12.  On that same date, Ellis also identified other applicants and marked their applications as "rejected."  *Id.* at ¶ 13.  Boyd then continued the onboarding and hiring of the previously identified lead candidate.  *Id.* at ¶ 14.

6

On March 10, 2021, Ellis downloaded and opened the file Plaintiff submitted with his application for the first time. *Id.* at ¶ 15.  The file was named "resume." *Id.*  Rather than a resume, however, the file was actually a copy of Plaintiff's First Charge of Discrimination, attached hereto as **Exhibit J** ("Plaintiff's Kansas Star Resume"); *see also* Ellis Statement at ¶¶ 15-16.  Ellis did not learn Plaintiff had filed a Charge of Discrimination against Boyd until March 10, 2021 – approximately one (1) month **after** she rejected his application.[3]

## IV.   **STANDARD OF REVIEW**

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

A fact is material if it "might affect the outcome of the suit under the governing law . . ." *Anderson*, 477 U.S. at 248.  A material factual dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  In contesting a motion for summary judgment, the nonmoving party is prohibited from relying "merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. of Newark, NJ v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  The non-movant's burden is

---

[3] As a matter of course, the application tracking system on the third-party career website parses information pulled from the attachments supplied by the candidate.  Ellis Statement at ¶ 17.  As a practical matter, the information parsed by the system is typically the first words contained on the attachment submitted by the applicant.  *Id.*  In most cases, the information parsed would be the name of the applicant as identified in his or her resume attached.  *Id.*  In Plaintiff's case, the first two words on the First Charge that he attached as his resume are the words "EEOC" and "Form," causing the system to identify Plaintiff's first and last names as "EEOC Form." *See* Plaintiff's Kansas Star Resume; *see also* Plaintiff Dep. at 176:1-176:4.

rigorous because the non-movant must "point to concrete evidence in the record" to defeat summary judgment; the party cannot meet this burden by pointing only to allegations and speculation. *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) (holding that "speculation and conjecture may not defeat summary judgment"). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (2008).

## V.    **ARGUMENT**

ADEA and ADA discrimination and retaliation claims are analyzed under the familiar three-step burden-shifting framework enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination and/or retaliation. If plaintiff is unable to establish a genuine issue of material fact as to at least one element of the prima facie case, defendant is entitled to summary judgment. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 501 (3d Cir. 1997). Second, if plaintiff establishes a prima facie case, the burden of production, not persuasion, then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* Third, if the employer is able to articulate a non-discriminatory reason, the burden shifts to plaintiff, who must then prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, and that the real reason was discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 763-64 (3d Cir. 1994). At all times throughout the *McDonnell-Douglas* burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but for' causation or causation in fact, remains on the employee." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

Based on the Complaint and Plaintiff's deposition testimony, Defendants understand Plaintiff to be pursuing the following theories:  (1) age discrimination in violation of the ADEA based on Plaintiff's position elimination in July 2020 (Count I); (2) disability discrimination in violation of the ADA based on Plaintiff's position elimination in July 2020 (Count II); (3) age-based retaliation in violation of the ADEA for failing to hire Plaintiff for the Kansas Star position after Plaintiff submitted his First Charge (Count III); and (4) disability-based retaliation in violation of the ADEA for failing to hire Plaintiff for the Kansas Star position after Plaintiff submitted his First Charge (Count IV).  Defendants address each theory in turn below.

### A.    SUMMARY JUDGMENT IS REQUIRED ON PLAINTIFF'S AGE DISCRIMINATION CLAIM UNDER THE ADEA (COUNT I).

Plaintiff **admits** he has <u>no</u> evidence of age-based animus, let alone evidence that would infer that his age was the "but for"[4] cause of his position elimination.  As a result, Defendants are entitled to summary judgment.

---

[4] The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age."  29 U.S.C. Section 623(a)(1) (emphasis added).  In *Gross v. FBL Fin. Servs.*, 557 U.S. 167 (2009), the United States Supreme Court held that this requires a plaintiff to "show that age was the 'but for' cause of the adverse employment action – that age had 'a determinative influence on the outcome.'"  *Kelly v. Moser*, 348 F. App'x 746, 749 (3d Cir. 2009)[4] (citing *Gross*, 557 U.S. at 176).  Said another way, it does not suffice to show that age played only some role in the decision.  *Kelly*, 348 F. App'x at 749-51.

*Gross* signaled a significant departure from prior case law applying the more plaintiff-friendly Title VII causation standard to ADEA claims, requiring that an age discrimination plaintiff prove only that age "made a difference in the employer's decision."  *See*, *e.g., DeJoy v. Comcast Cable Communications, Inc.*, 968 F. Supp. 963, 978-79 (D.N.J. 1997).  Under the heightened *Gross* "but for" standard, an age discrimination plaintiff bears a significantly more difficult burden not only at trial, but at the summary judgment stage as well.  *See Kelly*, 348 F. App'x at 749-51 (granting summary judgment in favor of employer, where "at most … age was one of multiple motivations").

Even if the Court were to put aside this critical admission, however, Plaintiff would still be unable to produce evidence from which a reasonable juror could conclude that the proffered legitimate, nondiscriminatory reason for his position elimination was merely a pretext for discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426-27 (3d Cir. 2013).

### 1. Plaintiff Cannot Establish the *Prima Facie* Case of Age Discrimination Because He Cannot Point to Any Facts Evidencing an Age-Based Animus.

To establish a prima facie case of age discrimination under either the ADEA and PHRA, a plaintiff must show that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the adverse action occurred under circumstances that create an inference that plaintiff's age was the but-for factor.[5] *Dodson v. Coatesville Hosp. Corp.*, Civ. No. 18-3065, 773 F. App'x 78, 80 (3d Cir. 2019). Here, Plaintiff cannot establish the fourth factor – that the adverse action occurred in circumstances that create an inference that plaintiff's age was the determinative factor in the decision – for multiple reasons.

### a. Plaintiff Admits his Age Did Not Factor Into the Decision to Eliminate his Position.

The record lacks any facts to create an inference that Plaintiff's age was the true cause of his position elimination. Indeed, Plaintiff admitted as much during his deposition:

---

[5] Typically, the fourth element of the *prima facie* case for age discrimination is a showing that the plaintiff was "ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Burton*, 707 F.3d at 426. However, there is no direct replacement for Plaintiff as Defendants eliminated Plaintiff's position. *See* Defendants' ROG Answers at Answer to ROG 7; Lowe Dep. at 43:3-43:15. Accordingly, in cases where is no direct replacement, "the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Willis*, 808 F.3d at 644 (internal quotation marks omitted).

Q.     Do you have any facts to indicate that your age had anything to do with your position elimination?

A.     No.

Deposition of Plaintiff 225:12 – 225:22.  at ¶ 87.  Said another way, **Plaintiff admitted under oath that his age was not the but-for reason for his termination.**  *Id.*  This admission alone is fatal to his age discrimination claims.  *See Kelly*, 348 F. App'x at 749-51 (affirming summary judgment in favor of employer, where "*at most . . . age was one of multiple motivations*" for his termination) (emphasis added); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (noting that at all times throughout the *McDonnell-Douglas* burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but for' causation or causation in fact, remains on the employee.").  For this reason, Plaintiff's ADEA discrimination claim fails as a matter of law.

> **b.     Lowe's Membership in the Same Protected Class as Plaintiff Negates Any Inference of Discrimination.**

Even if Plaintiff could point to any fact that raise an inference of age discrimination (which he cannot), courts in this Circuit have made clear that the alleged discriminator's membership in the same protected class as plaintiff diminishes, if not entirely extinguishes, any inference of discrimination.  *See, e.g., See Elwell v. PP & L Inc.*, 47 F. App'x 183, 189 (3d Cir. 2002) (finding plaintiff's ability to raise an inference of age discrimination to be weakened because the decision maker was a member of the same protected class); *E.E.O.C. v. BE&K Eng'g Co.*, 536 F. Supp. 2d 498, 506 (D. Del. 2008) (same); *Reap v. Cont'l Cas. Co.*, Civ. No. 99-1239, 2002 WL 1498679, at *14 (D.N.J. June 28, 2002) (granting summary judgment in favor of defendant as to plaintiff's age discrimination claim and noting the fact that when decision-makers are members of a plaintiff's protected class, it weakens any possible inference of discrimination); *Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682, 688 n.3 (D.N.J. 1996)

11

(granting summary judgment as to Plaintiff's ADEA claim and noting that a plaintiff's ability to raise an inference of discrimination is hampered when the decision-maker is a member of the plaintiff's protected class); *Sgro v. Bloomberg L.P.*, Civ. No. 05-731, 2008 WL 918491, at *8 (D.N.J. Mar. 31, 2008) (holding that any inference of discrimination is belied by the fact that the individuals involved in the termination decision belong to the same protected class as the plaintiff and granting summary judgment as to plaintiff's age claims), *aff'd in part, reversed in part on other grounds*, 331 F. App'x 932 (3d Cir. 2009).  Here, the decision-maker for both the furlough and the position elimination, Lowe, is in the same protected class as Plaintiff (age). Lowe Dep. at 6:13-6:14.  Accordingly, any inference of discriminatory intent is diminished, if not completely extinguished, and Plaintiff's claim must fail.  *Elwell*, 47 F. App'x at 189.

### c. Lowe's Decision to Hire Plaintiff in 2019 Further Negates Any Inference of Discrimination.

Courts in this Circuit have reasoned that "[w]hen the person contributing to the challenged employment action 'was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" *Reap*, 2002 WL 1498679, at *14 (granting summary judgment where the decision-maker in the complained of adverse employment action also hired the plaintiff) (quoting *Grady v. Affiliated Cent., In.,* 130 F.3d 553, 560 (2d Cir. 1997)).  Here, Lowe made the decision to hire Plaintiff and eliminate his position just months later.  Plaintiff Dep. at 37:11-38:5; Lowe Dep. at 19:19-19:24; Defendants' Answers to ROGs at Answer to ROG 7.  Surely, Lowe did not develop some sort of discriminatory animus against his own protected class in a matter of months.[6]  Accordingly, it would be "difficult to impute to" Lowe a discriminatory animus towards Plaintiff based on

---

[6] Indeed, Lowe chose to promote Schopf (age 60 at the time) to the Regional Director of IT position approximately three (3) months later.  Plaintiff Dep. at 98:4-98:21; Defendants' Answers to ROGs at Answer to ROG 3.

Plaintiff's age when Lowe made the decision to hire Plaintiff when Plaintiff was 63 years old. *Reap*, 2002 WL 1498679, at *14.

For those reasons, Plaintiff cannot establish the *prima facie* case of age discrimination under the ADEA and this claim must fail.

        **2.**        **Defendants' Explanation for the Elimination of Plaintiff's Position is Credible, Coherent, and Well-Documented, and Therefore Satisfies the Second Step of the *McDonnell-Douglas* Framework.**

Plaintiff's lack of evidence notwithstanding, Defendants articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment. Defendants eliminated the Director of IT position and subsumed its responsibilities into the Regional Director of IT position in order to reduce headcount during the COVID-19 pandemic. Zerfing Dep. at 26:20-26:23. Accordingly, Defendants met their minimal burden of proffering a legitimate, nondiscriminatory reason for the termination of Plaintiff's employment. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *Willis*, 808 F.3d at 644 ("This second step of *McDonnell Douglas* does not require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons.").

        **3.**        **Plaintiff Cannot Demonstrate That Defendants' Legitimate, Non-Discriminatory Reason is False or That His Age was the But-For Cause of His Termination.**

Assuming, *arguendo*, that Plaintiff could establish the *prima facie* case for age discrimination (which he cannot), Plaintiff is still required under the third step of the *McDonnell-Douglas* framework to offer enough evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not [the but-for] cause of the employer's action.

*Fuentes*, 32 F.3d at 763, *accord Hodczak v. Latrobe Specialty Steel Co.*, 451 F. App'x 238, 241–42 (3d Cir. 2011) (reflecting the modification to *Fuentes* and its progeny in light of *Gross*).

Under the first prong, a plaintiff cannot merely show that the employer's decision was wrong or mistaken. *Fuentes*, 32 F.3d at 765. Rather, "he must demonstrate that such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.*; *see also Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998). Said another way, Plaintiff must point to "evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006). As the Court noted in *Fuentes*, "this standard places a difficult burden on the plaintiff." *Id.* at 765. Under the second prong, "a plaintiff alternatively may survive summary judgment by 'adducing evidence, whether circumstantial or direct, that discrimination was more likely than not [the but-for] cause of the adverse employment action.'" *Id.* at 764. In particular, the plaintiff can point to the following types of evidence: "(1)the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." *Willis*, 808 F.3d at 645. Here, Plaintiff cannot survive summary judgment under either prong.

As to the first prong, no reasonable jury could conclude that any factor other than cost-saving was the determinative factor in Plaintiff's position elimination. Valley Forge, like all casinos in Pennsylvania, was completely closed during the COVID-19 pandemic. Defendants were forced to make difficult personnel decisions to save costs and keep its properties running during the shutdown, and Plaintiff's position was not the only position that Defendants eliminated during this time. Zerfing Dep. at 26:20-26:23. Further, as noted above, there is no

indication that Plaintiff's age played any role in the decision, nor has Plaintiff presented any evidence supporting the bald allegation.

Though Plaintiff will likely argue that he was a strong performer and should have been retained, it is not the Court's role to second-guess non-discriminatory business decisions.  As the Third Circuit has noted, "'federal courts are not arbitral boards ruling on the strength of "cause" for discharge.  The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'"  *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (alteration in original) (quoting *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir. 1996)).  Indeed, courts "are not a super-personnel department tasked with correcting unduly harsh employment actions; [they] are instead concerned with whether the reasons for such actions are pretextual." *See Klimek v. United Steelworkers Local 397*, 618 F. App'x 77, 80 (3d Cir. 2015) (internal quotation  marks  and citation omitted).

As to the second prong, Plaintiff has not pointed to any evidence that that discrimination was more likely than not the but-for cause of the adverse employment action.  Plaintiff has not pointed to any evidence that Defendants discriminated against Plaintiff in the past, discriminated against other members of Plaintiff's protected class, or treated similarly situated employees to Defendant more favorably.

In sum, no reasonable jury could conclude that Plaintiff's age was the but-for cause of Plaintiff's termination or that Defendants' legitimate business reason is pretext for discrimination.  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's age discrimination claim.

**B.      SUMMARY JUDGMENT IS REQUIRED ON PLAINTIFF'S  DISABILITY DISCRIMINATION CLAIM (COUNT II).**

   **1.      Plaintiff Cannot Establish the *Prima Facie* Case of Disability Discrimination**

In order to establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must present admissible evidence showing that: (1) he had a "disability" within the meaning of the ADA; (2) he was qualified to perform the essential functions of his job; and (3) he was terminated because of his disability.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).   If Plaintiff makes out a *prima facie* case, he must then prove that Defendants' legitimate, non-discriminatory reason for his discharge is pretextual.  *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).

Here, Plaintiff cannot establish the first and third elements of the *prima facie* case, and Plaintiff's claim must fail.  In regards to the first element, Plaintiff himself admitted that was not disabled.  *See* Plaintiff's Dep. at 84:17-85:1. ("Q.  Do you suffer from any medical conditions . . . that affect your everyday life? **A.  No.**  Q.  Do you suffer from any medical conditions that substantially limit a major life activity? . . . **A.  No.**"); *id.* at 192:14-192:15 ("Q.  Are you disabled?  **A. No.**"); *see also* 42 U.S.C. § 12102(1)(A) (defining a "disability" with respect to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such individual").

In regards to the third element, Plaintiff can point to no evidence that his alleged disabilities were the determinative cause of his termination.  At his deposition, Plaintiff testified as follows:

> Q.  Do you have any facts on which you base [that] any medical conditions or disability had anything to do with your position elimination?
>
> **A.  The only fact that I have is that I was out with a doctor's note.  Not everybody was.  I don't know if anybody else was, but I was.**

16

. . .

Q.  . . . [W]hen you say out with a doctor's note, you were referring to working remotely, right?

**A.  Correct.**

Q.  [B]ut there were other members of your team who were working remotely, correct?

**A.  That's right.**

. . .

Q.  . . . Do any of those individuals that you mentioned that worked remotely, are you aware of them having a doctor's note?

**A.  No.**

Q.  . . . [Are] there any other facts on which you base your claims in this lawsuit or in this case that you have not told me about today?

**A.  I don't think so.**

Plaintiff's Dep. at 225:16-225:23; 226:10-226:13; 227:23-228:9.  Plaintiff only points to the fact that he requested remote work during a pandemic as evidence that Defendants terminated him because of his purported disabilities.  This alone is insufficient, especially given Lowe and Zerfing's immediate approval and insistence that Plaintiff "be well" during the ongoing pandemic.  Plaintiff Dep. at 77:2-77:8, 81:17-81:24.   In sum, Plaintiff cannot point to any evidence of discriminatory animus or pattern of antagonism based on his alleged disability.  Accordingly, this claim fails.

> **2.      Plaintiff Cannot Demonstrate That Defendants' Legitimate, Non-Discriminatory Reasons for the Position   Elimination were False, or that Plaintiff's Alleged Disabilities were the But-for Cause of Those Decisions.**

Even if Plaintiff were able to make out the *prima facie* case for disability discrimination, this claim still must fail for the same reasons stated in sections V(A)(2) and (3) and Defendants incorporate them by reference.  For those reasons, Plaintiff cannot show that Defendants' reasons

for Plaintiff's position elimination were pretext for disability discrimination.   Accordingly, Defendants are entitled to summary judgment as to Plaintiff's disability discrimination claims.

### C.   SUMMARY   JUDGMENT   IS   REQUIRED   ON   PLAINTIFF'S RETALIATION   CLAIMS   UNDER   THE   ADEA   AND   THE   ADA (COUNTS III AND IV).[7]

To establish a prima facie case of retaliation Plaintiff must show:  (1) that he engaged in a protected activity (in this case, the filing of his First Charge); (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment action.  *Hutchins v. United Parcel Service, Inc.*, 197 F. App'x 152, 156 (3d Cir. 2006).

Here, Plaintiff cannot establish the third element – a causal link between the First Charge and Defendant Boyd's decision not to hire him for the Kansas Star Director of IT position.  To satisfy this link, Plaintiff "'must establish that his . . . protected activity was the ***but-for*** cause of the alleged adverse action by the employer.'" *Blakney v. City of Philadelphia*, 559 F. App'x 183, 185 (3d Cir. 2014) (emphasis added) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 362 (2013)); *see also Verma v. University of Pennsylvania*, 533 F. App'x 115, 119 (3d Cir. 2013) (citations omitted); *Petrulio v. Teleflex*, Civ. No. 12-7187, 2014 WL 5697309, at *7 (E.D. Pa. Nov. 5, 2014).   Plaintiffs may establish this link by demonstrating:   "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link," or, in the absence of that proof, (3) "that from 'the evidence gleaned from the entire record as a whole' the trier of fact should infer causation."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).   However, a plaintiff "**cannot** establish that there was a causal connection without

---

[7] The underlying facts for both retaliation claims are the same.  Accordingly, Defendants will address the claims together.

some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196-97 (3d Cir. 2015) (emphasis added); *Andreoli v. Gates,* 482 F.3d 641, 650 (3d Cir. 2007).

That is exactly the case here. Ellis, the individual responsible for selecting candidates for interviews for the Kanas Star Director of IT position, did not become aware of Plaintiff's First Charge until ***one month after*** the successful candidate accepted the offer of for that position. Ellis Statement at ¶¶ 9-10, 18. As a result, Plaintiff cannot establish the causation element of the *prima facie* case and these retaliation claims must fail. *Cf. Harrison-Harper v. Nike, Inc.*, 788 F. App'x 846, 850 (3d Cir. 2019) (affirming summary judgment as to plaintiff's retaliation claims where three of the four decision makers were unaware of plaintiff's protected activity); *Scott v. Genesis Healthcare, Inc.*, Civ. No. 15-0916, 2016 WL 4430650, at *21 (E.D. Pa. Aug. 22, 2016) (granting summary judgment as to plaintiff's retaliation claims where there was no evidence that the decision makers were aware of plaintiff's protected activity); *Gillyard v. Geithner*, 81 F. Supp. 3d. 437, 444-48 (E.D. Pa. 2015) (Hon. Eduardo C. Robreno) (same).[8]  Accordingly, Defendants are entitled to summary judgment as to Plaintiff's retaliation claims.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment in its entirety, and enter judgment in their favor.

---

[8] Even if were Plaintiff were to speciously argue that Ellis somehow had knowledge of the First Charge prior to Boyd hiring the other candidate (which she did not), Plaintiff still could not establish the causation element of his claims because the lead candidate was identified *prior* to Plaintiff submission of his application.  *See* Ellis Statement at ¶¶ 5, 7 (noting that the hiring manager interviewed the lead candidate and began the hiring process prior to Plaintiff submitting his application).  There can be no causation where the alleged adverse employment action occurred prior to the protected act.

Respectfully submitted,

*/s/ Jacqueline R. Barrett*
Jacqueline R. Barret, Esquire (PA No. 92433)
Brian R. Ellixson, Esquire (PA No. 319083)
**OGLETREE, DEAKINS, NASH,**
**SMOAK, & STEWART P.C.**
1735 Market Street, Suite 3000
Philadelphia, PA 19103
jacqueline.barrett@ogletreedeakins.com
brian.ellixson@ogletreedeakins.com
(215) 995-2800 (phone)
(215) 995-2801 (fax)

*Attorneys for Defendants*

Dated:  December 10, 2021

20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| STEVEN UMBRIA, | : CIVIL ACTION |
| | : |
| | : Case No. 2:21-cv-01718-ER |
| Plaintiff, | : |
| v. | : |
| | : |
| VALLEY FORGE CASINO RESORT | : |
| | : |
| and | : |
| | : |
| BOYD GAMING CORPORATION, | : |
| | : |
| Defendants. | : |
| | : |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record by electronic service through the Clerk of the Court's CM/ECF filing system.

Dated:  December 10, 2021

/s/ Brian R. Ellixson
Brian R. Ellixson (PA ID # 31903)
*Attorney for Defendants*

49432169.4

21