IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEVEN UMBRIA,                    :    CIVIL ACTION
                                  :    NO. 21-1718
          Plaintiff,              :
                                  :
     v.                           :
                                  :
VALLEY FORGE CASINO RESORT,       :
et al.,                           :
                                  :
          Defendants.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 18, 2022

## I.   INTRODUCTION

     Plaintiff Steven Umbria brings claims of discrimination and
retaliation against Defendants Valley Forge Casino Resorts
(hereinafter "VFCR") and VFCR's parent company, Boyd Gaming
Corporation (hereinafter "Boyd")(collectively "Defendants"),
alleging that Defendants violated the Americans with
Disabilities Act, 42 U.S.C. § 12101 ("ADA") and the Age
Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"). For
the following reasons, Defendants' motion will be granted.

## II.  BACKGROUND[1]

     Plaintiff was born in 1955, and at the time of filing, was
66 years of age. In 2019, Plaintiff applied for a job as

---

[1]    The facts set forth below are viewed in the light most
favorable to Plaintiff as the non-moving party.

Director of Information Technology ("IT") at VFCR. After interviewing with seven individuals, including VFCR's Vice President and General Manager, David Zerfing, and Boyd's Vice President of IT Operations, Greg Lowe, Plaintiff was hired in August 2019. Prior to working at VFCR, Plaintiff worked for twenty-three years as the Director of IT at five casino properties and had 40 years of experience in computer programming. Upon beginning his employment, Plaintiff received a temporary Pennsylvania casino license and, in January or February of 2020, Plaintiff received a permanent gaming license from the Pennsylvania Gaming Control Board ("PGCB").

Plaintiff reported to both Zerfing and Lowe. At the time, Zerfing was age 58 and Lowe was age 50. After starting with VFCR, Plaintiff helped update the existing VFCR system. Plaintiff received good performance reviews and received a salary increase on January 3, 2020. In March 2020, due the COVID-19 pandemic, VFCR temporarily closed. Once it reopened, a select number of employee, including Plaintiff, continued to work onsite.

Plaintiff suffers from several chronic health conditions, and following VFCR's temporary closure during the COVID-19 pandemic, Plaintiff's physician recommended that he should temporarily work remotely. Plaintiff provided a doctor's note to Zerfing, Lowe, and VFCR's human resources department dated March

2

24, 2020. The note provided that "[Plaintiff] is a 64-year-old male with multiple co-morbidities, and a medical history that includes hepatitis c, splenomegaly (an enlarged spleen), decompressed cirrhosis (advanced liver disease), diabetes, HTN (hypertension / high blood pressure) and coronary artery disease, all of which are chronic medical problems." Pl.'s Opp'n at 4, ECF No. 17-1 (citing Pl.'s Ex. J, ECF No. 17-8). The note advised that Plaintiff is at high-risk for COVID-19 and that it would be advisable for Plaintiff to stay at home working remotely.

Plaintiff's request to work remotely was approved. Plaintiff had access to his VFCR files at home, and would provide Lowe and other IT personnel with regular status reports. On April 25, 2020, in response to a status report, Eric Avery, Boyd's Regional IT Services Director, e-mailed Plaintiff stating "Great work Steve and group! This is excellent." Pl.'s Ex. M, ECF No. 17-8.

On March 8, 2020, VFCR informed Plaintiff that he was furloughed and would be brought back as soon as the property re-opened. Plaintiff claims he was informed that VFCR would bring him back on board as soon as possible because VFCR is required by PGCB to have an IT director onsite. Pl.'s Dep. 91:16-24; 92:1-5, ECF No. 17-3. Two other VFCR employees were furloughed

as well. The two other employees were under 40 and were not
disabled.[2]

In June 2020 VFCR reopened, and on July 14, 2020 Zerfing
informed Plaintiff that his employment was being terminated
because his position was being eliminated. Zerfing explained
that they decided they "were going to apply to the [Board] to
see if they can have a . . . regional director, instead of an
on-site director." Id. at 101:21-24; 102:1-2. Lowe told
Plaintiff that if another position became open, Lowe would
inform Plaintiff. Plaintiff was not offered any severance pay.
As of July 2020, the only person who had been terminated from
Boyd was Plaintiff. All other Boyd properties continued to have
Directors of IT, and all other managers of the VFCR IT
department remained employed.

The PGCB regulations require that casinos employ a director
of IT or a key licensed position at a casino property. On July
16, 2020, VFCR submitted a notification form to PGCB indicating
that Plaintiff was a COVID-related lay-off and never returned
from furlough. In the form, VFCR indicated that a new candidate
had been identified to fill Plaintiff's position, and that

---

[2]     Grant Brotze, the VFCR Manager of IT who previously
reported to Plaintiff, was not furloughed. Brotze, who is over
40 years younger than Plaintiff, remained employed in July 2020.
Brotze's position was later eliminated. Neither party specifies
when Brotze's position was eliminated.

candidate's license application would be forthcoming. See Pl. Ex. S, ECF No. 17-9. The record shows that Plaintiff's position, Director of IT, had been eliminated and was replaced with a regional role, Regional Director of IT. In July 2020, Tom Schopf was offered the position of Regional Director of IT. Schopf assumed many of the duties Plaintiff was previously responsible for. Schopf was born in 1960 and, at the time of filing, was 61 years of age. Schopf is four years and five months younger than Plaintiff.

Prior to his appointment as the Regional Director of IT, Schopf worked as the Program Manager for Boyd's Las Vegas IT Operations Department, but worked remotely from his home in Havertown, Pennsylvania. Schopf's prior duties, however, did not overlap with the duties required for Plaintiff's Director of IT role.

On August 25, 2020, Plaintiff's attorney reached out to Zerfing in an effort to resolve issues concerning the termination of his employment. Plaintiff's attorney told Zerfing that if the issues could not be resolved, Plaintiff intended to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") claiming age and disability discrimination. Because the parties were unable to resolve the issues amicably, on October 2, 2020, Plaintiff filed a charge with the EEOC (the "First EEOC Charge").

On November 12, 2020, a Director of IT position became open at Boyd's Kansas Star location (the "Kansas Star position"). Lowe had previously informed Plaintiff that he would inform Plaintiff if such a position became open, but Lowe did not inform Plaintiff about the Kansas Star position. Plaintiff saw a website posting for the position in late January or early February 2021 and applied online.[3] Prior to Plaintiff applying, Crystal Ellis, the individual tasked with filling the position, identified another candidate for the position. Plaintiff was not hired for the Kansas Star position. Instead, Ellis identified Cheng Lo as a potential candidate and ultimately offered him the job. Lo had no previous experience with any Boyd properties.

Plaintiff maintains that when Plaintiff applied for the Kansas Star position, his name auto-filled to "EEOC" on the application. Defendants deny this, but contend that Plaintiff uploaded an EEOC form/charge in lieu of his resume. Plaintiff maintains that Lowe and Ellis did not consider Plaintiff for the Kansas Star position because they were aware of Plaintiff's First EEOC Charge. Plaintiff then filed another EEOC charge (the "Second EEOC Charge") outlining the alleged retaliation.

---

[3]     Plaintiff indicates that he saw the posting in February 2021, while Defendants maintain that Plaintiff submitted an application on January 26, 2021.

Plaintiff has since looked for a new job, but remains unemployed.

### III. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A factual dispute is genuine if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. At the summary judgment stage, the Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015) (citing Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 415 (3d Cir. 2011)).

**IV.  DISCUSSION**

Plaintiff alleges that Defendants violated the ADEA and ADA by wrongfully terminating Plaintiff because of his age and/or disability, and by retaliating against Plaintiff for filing the First EEOC charge.[4] Defendants argue that Plaintiff is unable to make a prima facie case for his claims.

The parties agree that Plaintiff's ADEA and ADA discrimination and retaliation claims require application of the well-rehearsed burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).

The McDonnell Douglas framework proceeds in three steps. First, the plaintiff must establish a prima facie case of racial discrimination. The plaintiff's burden at this stage is "not onerous," as the goal "is to 'eliminate[] the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the prima facie case creates an inference that the

---

[4]    Plaintiff also intends to bring age, disability, and retaliation claims under the Pennsylvania Human Relations Act ("PHRA"). Plaintiff filed his Second EEOC Charge with the Pennsylvania Human Relations Commission on March 17, 2021 and is required to wait for at least one year from that time until Plaintiff is able to seek leave to amend his complaint and add the PHRA claims. Regardless, because Plaintiff's PHRA claims would treated under the same legal standard as his federal claims, see Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643 (3d Cir. 2015), even if Plaintiff amended his complaint, for the reasons set forth below, his PHRA claims would not survive.

defendant's actions were discriminatory." <u>Anderson v. Wachovia</u>
<u>Mortg. Corp.</u>, 621 F.3d 261, 271 (3d Cir. 2010) (alteration in
original) (quoting <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450
U.S. 248, 254 (1981)).

If a plaintiff establishes his prima facie case, "the
burden of <u>production</u> shifts to the defendant to 'articulate some
legitimate, nondiscriminatory reason'" for the adverse
employment action. <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir.
1994) (emphasis in original) (quoting <u>McDonnell Douglas</u>, 411
U.S. at 802). This burden is "relatively light" and is satisfied
if the employer provides "evidence which, taken as true, would
permit the conclusion that there was a nondiscriminatory reason
for the unfavorable employment decision." <u>Id.</u> (citing <u>St. Mary's</u>
<u>Honor Ctr. v. Hicks</u>, 509 U.S. 502, 509 (1993)).

Finally, "the burden of production rebounds to the
plaintiff, who must now show by a preponderance of the evidence
that the employer's explanation is pretextual." <u>Id.</u> To defeat a
motion for summary judgment, "the plaintiff must point to some
evidence, direct or circumstantial, from which a factfinder
could reasonably either (1) disbelieve the employer's
articulated legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action." <u>Id.</u> at 764
(citing <u>Hicks</u>, 509 U.S. at 517). Under the burden-shifting

framework, "the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id. at 763 (citing Burdine, 450 U.S. at 253).

## A.   ADEA Claim Based on Plaintiff's Termination

The ADEA prohibits an employer "from taking adverse employment actions against an employee 'because of' the employee's age." Carter v. Mid-Atlantic, Healthcare, LLC, 228 F. Supp. 3d 495, 501 (E.D. Pa. Jan. 12, 2017). The plaintiff must show "that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). Thus, age must have been "a determinative influence on the outcome." Id. (internal citations and quotation marks omitted). However, it need not be the sole cause. Miller v. CIGNA Corp., 47 F.3d 586, 596 (3d Cir. 1995); see also, e.g., Robinson v. City of Phila., 491 F. App'x 295, 300 (3d Cir. 2012) ("We do not require that age discrimination be the sole cause for an adverse employment decision to prevail on an age discrimination claim . . . and it is reversible error for a District Court to so rule.").

To establish a prima facie case under the ADEA, Plaintiff must show that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and

(4) he was "ultimately replaced by another employee who was sufficiently younger so as to support an inference of discriminatory motive." <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 644 (3d Cir. 2015); <u>Burton v. Teleflex Inc</u>., 707 F.3d 417, 426 (3d Cir. 2013). Defendants argue that Plaintiff cannot establish the fourth element: that Defendants' act of terminating Plaintiff's employment created an inference of discrimination.

Defendants aver that there are no facts to support that age was a determinative factor in Defendants' decision to terminate Plaintiff. Defendants point to Plaintiff's deposition testimony where he admitted that he did not have any facts to support that age had to do with the elimination of his position. <u>See</u> Pl.'s Dep. 225:12-22. Defendants maintain that this is fatal to Plaintiff's prima facie case.

Plaintiff does not dispute Defendants' evidence. Instead, Plaintiff argues that because Schopf, who is four years and five months younger than Plaintiff, took over Plaintiff's duties in the newly created Regional Director of IT role, Plaintiff has established an inference of discrimination.

Generally, a plaintiff may provide evidence that they were replaced, or passed over, by one "who was sufficiently younger as to support an inference of discriminatory motive." <u>Martinez v. UPMC Susquehanna</u>, 986 F.3d 261, 266 (3d Cir. 2021) (citing

*Willis*, 808 F.3d at 644); see also *Carter*, 228 F. Supp. 3d at 502 (noting the same). There is no bright-line rule defining what age differential is required to meet the "sufficiently younger" standard. Some courts have found an age differential of slightly less than five years to be sufficient to satisfy the standard. See, e.g., *Carter*, 228 F. Supp. at 904 (finding that a differential of four years and five months to be sufficient; *Robinson v. Matthews Int'l Corp.*, No. 06-1504, 2009 WL 735876 (W.D. Pa. Mar. 20, 2009), aff'd, 368 Fed. App'x 301 (3d Cir. 2010) (finding a four-year age differential to be sufficient). However, most courts within this circuit have required an age differential of at least five years. See, e.g., *Gutknecht v. SmithKline Beecham Clinical Labs., Inc.*, 950 F. Supp. 667, 672 (E.D. Pa. 1996); *Knox v. Fifth Third Bancorp*, No. 12-539, 2014 WL 359818, at *13 (W.D. Pa. Feb. 3, 2014); *Martin v. Healthcare Business Resources*, No. 00-3244, 2002 WL 467749, at *5 n.7 (E.D. Pa. March 26, 2002); *Lloyd v. Cty. Of Bethlehem*, No. 02-00830, 2004 WL 540452, at *6 (E.D. Pa. Mar. 3, 2003).

Other than the age differential between Plaintiff and Schopf, Plaintiff does not point to any other facts in the record to support an inference of discrimination. Plaintiff's case is further weakened because a relevant decision maker, Gregory Lowe, was in the same protected class as Plaintiff. See *Elwell v. PP&L, Inc.*, 47 F. App'x 183, 189 (3d Cir. 2002)

(noting the plaintiff's case was "furthered weakened by the fact that [the decisionmaker] was fifty years old at the time he made his hiring choice."); see also Borzak v. City of Bethlehem, No. 19-5716, 2021 WL 6073095, at *12 (E.D. Pa. Dec. 23, 2021) (finding that the inference of discrimination was rebutted because the decision-makers were members of the same protected class as the plaintiff); Dungee v. Northeast Foods, Inc., 940 F. Supp. 682 n.3 (D.N.J. 1996) ("The fact that the final decision maker and both interviewers are members of the plaintiff's protected class . . . weakens any possible inference of discrimination."). Additionally, Lowe chose to promote Schopf, who was also over 60, to the Regional Director of IT position. Thus, there is insufficient evidence to support that a decision-maker had a discriminatory animus towards Plaintiff because of his age.

Because Schopf was less than five years younger than Plaintiff, and because there is no additional evidence supporting an inference of discrimination, Plaintiff has failed to state a prima facie case as a matter of law. Accordingly, Defendants' motion will be granted on this ground.

B.   __ADA Claim based on Plaintiff's Termination__

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must present admissible evidence showing that: (1) he had a "disability" within the meaning of the ADA; (2) he was qualified to perform the essential functions of his job; and (3) he was terminated because of his disability. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). Defendants argue that Plaintiff cannot meet the first and third elements as a matter of law.

With respect to the first element, the ADA defines as disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarding as having such impairment." 42 U.S.C. § 12102(1). Defendants primarily argue that Plaintiff cannot meet the first element of an ADA claim because he admitted during his deposition that he was not disabled, and admitted that he does not suffer from medical conditions that limit a major life activity. Plaintiff does not dispute that he admitted to these facts. Instead, Plaintiff argues he has "a record of such impairment" and he has been "regard[ed] as having such impairment." Id.

Under the ADA, "[a]n individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Plaintiff points to the doctor's note that he submitted to Defendants and argues that this counts as a record of impairment. The note provided that "[Plaintiff] is a 64-year-old male with multiple co-morbidities, and a medical history that includes hepatitis c, splenomegaly (an enlarged spleen), decompressed cirrhosis (advanced liver disease), diabetes, HTN (hypertension / high blood pressure) and coronary artery disease, all of which are chronic medical problems." Pl.'s Opp'n at 4, ECF No. 17-1 (citing Pl.'s Ex. J, ECF No. 17-8). The note advised that Plaintiff is at high-risk for COVID-19 and that it would be advisable for Plaintiff to stay at home working remotely. However, the doctor's note does not indicate that Plaintiff's "chronic medical problems" have impaired or limited Plaintiff's major life activities. Thus, Plaintiff has not pointed to any evidence that supports that he has a "record of impairment." 42 U.S.C. § 12102(1).

Next, Plaintiff argues that Defendants regarded Plaintiff as having a disability. Under the ADA, person is "regarded as" disabled if the person:

15

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 187 (3d Cir. 1999) (citing 29 C.F.R. § 1630.2(*l*)) (alterations in original).

Plaintiff argues that because Defendants granted Plaintiff's request for an accommodation, and because Defendants eventually terminated Plaintiff, Defendants viewed Plaintiff as having an impairment. However, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action." Kelly v. Drexel University, 94 F.3d 102, 109 (3d Cir. 1996) (citing Chandler v. City of Dallas, 2 F.3d 1385, 1393 (5th Cir. 1993)). Plaintiff does not point to additional facts in the record to support the argument that Defendants treated Plaintiff as having an impairment that substantially limits major life activities. Additionally, Plaintiff points to no evidence that Defendants perceived Plaintiff as being unable to perform his job duties. See, e.g., Taylor, 177 F.3d at 188 (noting that "an

employer's perception that an employee cannot perform a wide range of jobs suffices to make out a 'regarded as' claim.").

As Plaintiff has not raised a genuine dispute of fact with respect to whether Plaintiff has a disability under the ADA's definition, Plaintiff has failed to state a prima facie case as a matter of law.[5] Accordingly, Defendants' motion will be granted on this ground.

C.    **Retaliation**

Plaintiff brings claims for retaliation under the ADA and ADEA. Plaintiff maintains that Defendants did not consider and/or hire Plaintiff for the Kansas Star position because Plaintiff filed his First EEOC Charge.

To establish a prima facie case of retaliation under both the ADA and ADEA, Plaintiff must show that: (1) he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment action. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Nelson v. Upsala College, 51 F.3d 383, 386 (3d Cir. 1995). Defendants argue that Plaintiff cannot maintain a prima facie case of

---

[5]    The Court need not consider whether Plaintiff satisfied the third element-whether he was terminated "because of his disability."

retaliation because Plaintiff cannot satisfy the third element
as a matter of law.

A plaintiff may establish a causal link between the
protected activity and adverse action by showing
"(1) an unusually suggestive temporal proximity between the
protected activity and the allegedly retaliatory action, or (2)
a pattern of antagonism coupled with timing to establish a
causal link." Petril v. Cheyney Univ. of Pa., 789 F. Supp. 2d
574, 581 (E.D. Pa. 2011) (citing Lauren W. ex Rel. Jean W. v.
DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)). Alleged
retaliatory conduct that occurred "several months after [the
plaintiff's] last protected activity" may be sufficient to show
causation. Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178
(3d Cir. 1997). However, the Third Circuit has emphasized that
"it is causation, not temporal proximity itself, that is an
element of plaintiff's prima facie case, and temporal proximity
merely provides an evidentiary basis from which an inference can
be drawn." Id.

Causation "necessarily involves an inquiry into the motives
of an employer, [and] is highly context-specific." Id. "The
plaintiff, however, cannot establish that there was a causal
connection without some evidence that the individuals
responsible for the adverse action knew of the plaintiff's
protected conduct at the time they acted." Daniels v. School

Dist. of Phila., 776 F.3d 181, 197 (3d Cir. 2015); see also
Ambrose v. Twp. of Robinson, Pa., 303 F.3d 488, 493 (3d Cir.
2002) ("It is only intuitive that for protected conduct to be a
substantial or motiving factor in a decision, the decisionmakers
must be aware of the protected conduct."); Chase v. Frontier
Comm. Corp., 361 F. Supp. 3d 423, 447 (M.D. Pa. Jan. 18, 2019)
(same).

Plaintiff contends that the decisionmakers in this case,
Lowe and Ellis, learned that Plaintiff had filed his First EEOC
Charge before they took the alleged adverse actions against
Plaintiff. If at the time that Lowe failed to advise Plaintiff
of the Kansas Star position, and at the time Ellis hired Lo
instead of Plaintiff, Lowe and Ellis knew of Plaintiff's First
EEOC Charge, an inference of discrimination can be raised. The
issue then, under Plaintiff's theory, is whether Plaintiff has
provided sufficient evidence for a reasonable jury to conclude
that Lowe and Ellis knew of Plaintiff's first EEOC Charge.

First, Plaintiff points to evidence to support that Lowe
informed Plaintiff that he would let Plaintiff know if a job
opportunity became available. Plaintiff contends that Lowe
became aware that Plaintiff intended to file an EEOC charge in
September 2020 after Plaintiffs' attorney told Zerfing that
Plaintiff would file an EEOC charge if the issues could not be
resolved amicably. Plaintiff argues that Lowe must have learned

of Plaintiff's First EEOC Charge, and as a result, Lowe did not advise Plaintiff that the Kansas Star Director of IT Position became available. However, other than this speculation, Plaintiff does not point to any evidence of record to support that Lowe actually had personal knowledge of Plaintiff's First EEOC Charge.

Second, Plaintiff claims that Crystal Ellis, the individual responsible for filling the Kansas Star position, hired Lo instead of Plaintiff because Plaintiff filed the First EEOC Charge. Plaintiff claims that he applied to the Kansas Star position in late January 2021 or early February 2021. Plaintiff maintains that the online system automatically changed his name to "EEOC," and that when he went to review his online application at a later date, an EEOC document had been uploaded to his account. Plaintiff argues that "[t]his information suggests that Boyd has an internal mechanism in place to identify [Plaintiff] as a former employee who filed an EEOC charge." Pl.'s Resp. at 31-32, ECF No. 17-1. Plaintiff, however, relies only on speculation to support this theory and does not point to any evidence of record. For example, Plaintiff does not point to any evidence to support that Ellis had personal knowledge of the First EEOC Charge when she identified Lo as a

candidate, or that Ellis had personal knowledge when she offered Lo the Kansas Star position.[6]

Because Plaintiff has not shown that Lowe had personal knowledge of Plaintiff's EEOC charge when the Kansas Star position become available, or that Ellis had personal knowledge of Plaintiff's First EEOC Charge when she identified Lo as a candidate for the Kansas Star position, Plaintiff has failed to raise a genuine dispute of material fact with respect to the issue of causation. See Daniels, 776 F.3d at 197; Ambrose, 303 F.3d at 493. Accordingly, Defendants' motion will be granted on this ground.

**V. CONCLUSION**

For the foregoing reasons, Defendants' motion will be granted. An appropriate order follows.

---

[6]   Given that Plaintiff has failed to raise a genuine dispute of fact concerning Ellis's personal knowledge of Plaintiff's First EEOC Charge, the Court need not consider Ellis's statement in support of Defendants' motion for summary judgment or Plaintiff's argument that Ellis's statement is barred because it has failed to comply with the requirements of 28 U.S.C. § 1746(2).